UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| MATTHEW G., § § § Plaintiff, § § v. § § COMMISSIONER OF SOCIAL SECURITY, § § Defendant. § | Case # 1:21-cv-506-DB MEMORANDUM DECISION AND ORDER |

## INTRODUCTION

Plaintiff Matthew G. ("Plaintiff") brings this action pursuant to the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner") denying his application for Disability Insurance Benefits ("DIB") under Title II of the Act. *See* ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c), and the parties consented to proceed before the undersigned in accordance with a standing order (*see* ECF No. 14).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). *See* ECF Nos. 9, 10. Plaintiff also filed a reply. *See* ECF No. 11. For the reasons set forth below, Plaintiff's motion (ECF No. 9) is **GRANTED**, the Commissioner's motion (ECF No. 10) is **DENIED**, and this matter is **REMANDED** to the Commissioner for further administrative proceedings as set forth below.

## BACKGROUND

On December 9, 2013, Plaintiff protectively filed his DIB application alleging disability beginning October 31, 2012 (the disability onset date), due to: "(1) major depression; (2) trouble concentrating; (3) anxiety; (4) head trauma; (5) migraine headaches; (6) double vision; (7) post-concussion syndrome; (8) post-traumatic headache; and (9) post-traumatic stress disorder."

Transcript ("Tr.") 17, 153-58, 185. Plaintiff's claim was denied initially on July 2, 2014, after which he requested an administrative hearing. Tr. 17. On December 19, 2 016, Administrative Law Judge Paul Georger ("the ALJ") held a hearing in Buffalo, New York. Tr. 17. Plaintiff appeared and testified at the hearing and was represented by Amanda Jordan, an attorney. *Id*. Andrew Pasternak, an impartial vocational expert, also appeared and testified at the hearing. *Id*.

The ALJ issued an unfavorable decision on February 10, 2017, finding Plaintiff not disabled. Tr. 14-26. On September 26, 2017, the Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 1-6), and the ALJ's February 10, 2017 decision thus became the "final decision" of the Commissioner subject to judicial review under 42 U.S.C. § 405(g).

Thereafter, Plaintiff brought an action in the United States District Court for the Western District of New York, Case No. 1:17-cv-1246-LJV. *See* Tr. 630-35. On May 28, 2019, the Court issued an order remanding the case for further administrative proceedings (Tr. 642-53), and on July 12, 2019, the Appeals Council ordered a new hearing (Tr. 655). On February 25, 2020, the ALJ held a second hearing in Buffalo, New York, at which Plaintiff appeared and testified and was represented by Lewis Schwartz ("Mr. Schwartz"), an attorney. Tr. 565. Renee Jubrey, an impartial vocational expert ("VE"), also appeared and testified. *Id*.

Following the hearing, the ALJ sent a Vocational Interrogatory to the VE to clarify information regarding Plaintiff's vocational capabilities. Tr. 820-24. After the ALJ proffered the VE's responses (Tr. 825-30) to Mr. Lewis (Tr. 832-33), Mr. Schwartz requested a supplemental hearing to cross-examine the VE regarding her response to the Vocational Interrogatory and pose additional hypothetical questions (Tr. 835).

On November 10, 2020, the ALJ held a supplemental hearing via telephone.[1] Plaintiff appeared and testified at the hearing and was represented by Mr. Schwartz. Tr. 525. The ALJ considered the case *de novo* and issued an unfavorable decision on December 23, 2020, again finding Plaintiff not disabled. Tr. 522-42. Accordingly, the ALJ's November 10, 2020 decision became the Commissioner's final decision, and Plaintiff subsequently commenced this action.

## **LEGAL STANDARD**

### I. District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. § 405(g)) (other citation omitted). The Act holds that the Commissioner's decision is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F. 3d 496, 501 (2d Cir. 1990).

### II. The Sequential Evaluation Process

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of

---

[1] Due to the extraordinary circumstance presented by the Coronavirus Disease 2019 ("COVID-19") pandemic, all participants attended the hearing by telephone. Tr. 525.

impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id*. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments meeting the durational requirements, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id*. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, the claimant is disabled. *Id*. § 404.1509. If not, the ALJ determines the claimant's residual functional capacity, which is the ability to perform physical or mental work activities on a sustained basis notwithstanding limitations for the collective impairments. *See id*. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. *Id*. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id*. § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## ADMINISTRATIVE LAW JUDGE'S FINDINGS

The ALJ analyzed Plaintiff's claim for benefits under the process described above and made the following findings in his November 10, 2020 decision:

1. The claimant last met the insured status requirements of the Social Security Act on March 31, 2016.

2. The claimant did not engage in substantial gainful activity during the period from his alleged onset date of October 31, 2012 through his date last insured of March 31, 2016 (20 CFR 404.1571 *et seq*.).

3. Through the date last insured, the claimant had the following severe impairments: post-concussion syndrome with migraine headaches; anxiety disorder; major depressive disorder; post-traumatic stress disorder ("PTSD"); bipolar disorder; and cognitive dysfunction (20 CFR 404.1520(c)).

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. Through the date last insured, the claimant had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a)[2] except he could perform work that did not require any use of ramps, stairs, ladders, ropes, or scaffolds. The claimant could perform work that did not require any balancing, kneeling, crouching, or crawling. He could occasionally stoop. The claimant could perform work that did not require any exposure to unprotected heights or moving mechanical parts. He could perform work that did not require operation of a motor vehicle. The claimant could perform simple, routine, and repetitive tasks, not at a production rate, and make simple, work-related decisions. He could occasionally interact with supervisors, co-workers, and the general public. The claimant could perform work with occasional changes to the worksite and routine.

6. Through the date last insured, the claimant was unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on August 31, 1977 and was 38 years old, which is defined as a younger individual age 18-44, on the date last insured (20 CFR 404.1563).

8. The claimant has at least a high school education (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not

---

[2] "Sedentary" work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569(a)).

11. The claimant was not under a disability, as defined in the Social Security Act, at any time from October 31, 2012, the alleged onset date, through March 31, 2016, the date last insured (20 CFR 404.1520(g)).

12. Substance abuse is not material to the issue of disability.

Tr. 522-41.

Accordingly, the ALJ determined that, for the application for a period of disability and disability insurance benefits, protectively filed on December 9, 2013, the claimant was not disabled under sections 216(i) and 223(d) of the Social Security Act through March 31, 2016, the last date insured. Tr. 542.

## **ANALYSIS**

Plaintiff asserts two points of error. First, Plaintiff argues that the ALJ's failure to evaluate an opinion from vocational rehabilitation counselor Carolyn Porreca ("Ms. Porreca") warrants remand. *See* ECF No. 9-1 at 14-19. Next, Plaintiff argues that the ALJ failed to properly weigh an examining opinion from clinical neuropsychologist Jessica Englert, Ph.D. ("Dr. Englert"). *See id*. at 19-23. According to Plaintiff, these errors rendered the RFC and the ALJ's decision unsupported by substantial evidence. *See id*. 14-23.

In response, the Commissioner generally argues that the ALJ's decision was supported by substantial evidence. *See* ECF No. 10-1 at 17. The Commissioner further argues that because the RFC limited Plaintiff to unskilled simple work, routine repetitive tasks, no production rate, occasional changes, and occasional interaction with others, it sufficiently accounted for the limitations assessed by Ms. Porreca. *See id*.

With respect to Plaintiff's second point, the Commissioner argues that the ALJ appropriately considered all the regulatory factors in weighing Dr. Englert's opinion and reasonably determined that the opinion was only entitled to partial weight because it was inconsistent with other record evidence, including Plaintiff's activities of daily living and mental status examination. *See id*. at 10-12. The Commissioner further argues that, except for the off-task limitation that was inconsistent with the record as a whole, the ALJ accounted for a majority of Dr. Englert's limitations assessed in the RFC. *See id*. at 12.

The Commissioner's determination that a claimant is not disabled will be set aside when the factual findings are not supported by "substantial evidence." 42 U.S.C. § 405(g); *see also Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000). Substantial evidence has been interpreted to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. The Court may also set aside the Commissioner's decision when it is based upon legal error. *Rosa*, 168 F.3d at 77.

Upon review of the ALJ's decision and the entire record, the Court finds that the ALJ's failure to weigh, or even discuss, the March 2016 opinion of vocational rehabilitation counselor Ms. Porreca[3] (Tr. 456-58) is an error that warrants remand.[4] In determining a plaintiff's RFC, the ALJ must evaluate every relevant medical opinion. 20 C.F.R. § 416.927(c). Even though, as a vocational counselor, Ms. Porreca is not considered an acceptable medical source (*see* 20 C.F.R. § 404.1513(d) and § 416.913; SSR 06-03p, 2006 WL 2329939), whose opinion the ALJ was

---

[3] Ms. Porreca is a vocational rehabilitation counselor with ACCES-VR (Adult Career and Continuing Education Services-Vocational Rehabilitation), a division of the New York State Education Department that assists individuals with disabilities to achieve and maintain employment and to support independent living through training, education, rehabilitation, and career development. *See* https://www.acces.nysed.gov/vr (last visited Jan. 15, 2024). (Tr. 456-58) is an error that warrants remand.

[4] The Court notes that the ALJ did address Ms. Porreca's opinion in his February 2017 decision, noting that it did "not evidence the need for greater limitations than those indicated [in the RFC] above." Tr. 25. However, the previous decision is insufficient to support the ALJ's failure to address the opinion in the current decision because the ALJ's decision was *de novo*. Tr. 565.

obligated to assign weight or give deference, the ALJ nevertheless "should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." SSR 06-03P, at *6; *Beckers v. Colvin*, 38 F. Supp. 3d 362, 371 (W.D.N.Y. 2014) (an ALJ should explain the weight given to other source opinions, or otherwise ensure that the discussion of the evidence allows the claimant or subsequent reviewer to follow the ALJ's reasoning).

Furthermore, opinions from "other sources" may be considered as to the severity of the claimant's impairment and ability to work. *See* 20 C.F.R. § 416.913(d) (1); SSR 06-3p. Accordingly, an ALJ should not reject them "out of hand." *Anderson v. Colvin*, No. 5:12-CV-1008 GLS/ESH, 2013 WL 5939665, at *6 (N.D.N.Y. Nov. 5, 2013). Here, Ms. Porreca opined that Plaintiff had difficulty sustaining behavior for prolonged periods; he needed assistance making decisions with basic life necessities; he would have difficulty attending multiple tasks at once and was easily distracted; and he had difficulty retaining information for more than six months. Tr. 456. She also opined that Plaintiff had difficulty following multiple directions; difficulties answering questions regarding personal history; communicating through writing; explaining information coherently; and repeating information. Tr. 457. Thus, Ms. Porreca's opinion suggests that Plaintiff was perhaps more limited than the ALJ found in the decision.

The Commissioner argues that, because the RFC limited Plaintiff to unskilled simple work, routine repetitive, no production rate, occasional changes, and occasional interaction with others, the ALJ accounted for Ms. Porreca's. *See* ECF No. 10-1 at 17 (citing Tr. 532). However, the Court is not convinced that this is so. "Even assuming that the opinions in the record were consistent with the ALJ's RFC assessment, the law does not permit this Court to infer that the ALJ relied

8

upon the medical opinions in formulating her RFC assessment. Such *post hoc* interpretations of an ALJ's decision are not permitted." *Cestare v. Colvin*, No. 15-CV-6045P, 2016 WL 836082, at *4 (W.D.N.Y. Mar. 4, 2016); *Hall v. Colvin*, 37 F. Supp. 3d 614, 626 (W.D.N.Y. 2014) ("Even if accurate, this a *post hoc* rationalization that is not apparent from the face of the ALJ's decision. A reviewing court may not accept appellate counsel's *post hoc* rationalization for agency action.") (internal quotation marks and citations omitted); *see also Julie Y. v. Comm'r of Soc. Sec.*, No. 19-CV-1362-HBS, 2021 WL 431666, at *5 (W.D.N.Y. Feb. 8, 2021) ("Even if the Court were able to arrange the above evidence in a way that yielded [the ALJ's finding], it is not the Court's responsibility to articulate the ALJ's logic."); *Dep't of Homeland Sec. v. Regents of the Univ. of California*, 207 L. Ed. 2d 353, 140 S. Ct. 1891, 1896 (2020) (internal quotations omitted) ("Judicial review of agency action . . . is limited to the grounds that the agency invoked when it took the action."). As explained by the Supreme Court, the requirement that an Agency provide reasons in the first instance is not "merely a formality." *Id*.

The ALJ's failure to explain his reasoning frustrates this Court's efforts to assess the validity of the ALJ's ultimate findings and "does not afford an adequate basis for meaningful judicial review*." Smith v. Comm'r of Soc. Sec.*, No. 19-CV-6194-LJV, 2020 WL 4904956, at *2 (W.D.N.Y. Aug. 19, 2020) (citations and internal quotation marks omitted). Accordingly, the Court remands this case so that the ALJ may address the deficiencies noted above.

Because the Court has already determined, for the reasons discussed above, that remand of this matter for further administrative proceedings is necessary, the Court declines to address Plaintiff's additional arguments. *See, e.g., Bell v. Colvin*, No. 5:15-CV-01160 (LEK), 2016 WL 7017395, at *10 (N.D.N.Y. Dec. 1, 2016) (declining to reach arguments "devoted to the question whether substantial evidence supports various determinations made by [the] ALJ" where the court

had already determined remand was warranted*); Morales v. Colvin*, No. 13cv06844 (LGS) (DF), 2015 WL 2137776, at *28 (S.D.N.Y. Feb. 10, 2015) (the court need not reach additional arguments regarding the ALJ's factual determinations "given that the ALJ's analysis may change on these points upon remand"), *adopted*, *261 2015 WL 2137776 (S.D.N.Y. May 4, 2015).

## CONCLUSION

Plaintiff's Motion for Judgment on the Pleadings (ECF No. 9) is **GRANTED**, the Commissioner's Motion for Judgment on the Pleadings (ECF No. 10) is **DENIED**, and this matter is **REMANDED** to the Commissioner for further administrative proceedings consistent with this opinion pursuant to sentence four of 42 U.S.C. § 405(g). *See Curry v. Apfel*, 209 F.3d 117, 124 (2d Cir. 2000). The Clerk of Court is directed to enter judgment and close this case.

**IT IS SO ORDERED**.

*/s/ Don D. Bush*
DON D. BUSH
UNITED STATES MAGISTRATE JUDGE